UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DANIEL ADAMS, | : | Case No. 3:10-cv-180 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | : | |
| Defendant. | : | |

## DECISION AND ENTRY: (1) THE ALJ'S NON-DISABILITY FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE AND IS AFFIRMED; AND (2) THIS CASE IS CLOSED

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore not entitled to supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") 31).

I.

On April 4, 2005, Plaintiff filed an application for SSI, alleging he became disabled on December 31, 1996, as a result of right foot drop and a nervous condition. (Tr. 82, 101). His applications denied initially and on reconsideration, Plaintiff timely filed for a *de novo* hearing on his claims before an ALJ. (Tr. 40-4, 47-9, 50). Three hearings were held, all before ALJ Thomas McNichols. The first hearing, on December 18, 2007, was continued because Plaintiff was unable to participate. (Tr. 398-401).

On July 11, 2008, the second hearing was held wherein a medical expert and a vocational expert testified, but Plaintiff was again unavailable, necessitating another continuance. (Tr. 402-20). The third hearing was held on August 25, 2008, at which Plaintiff, represented by counsel, testified, as did a vocational expert (once more). (Tr. 423-55). On September 8, 2008, the ALJ issued a decision finding Plaintiff not disabled as defined by the Social Security Act and thus not entitled to SSI. (Tr. 31). Plaintiff sought review by the Appeals Council, which denied the request on May 18, 2010, making the ALJ's decision the final decision of the Commissioner. (Tr. 5-7). Plaintiff thereafter brought this action in federal court under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying him SSI.

The ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of his decision, were as follows:

1. The claimant has not engaged in substantial gainful activity since March 14, 2005, the application date (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following "severe" impairments: residuals of a right ankle injury and gastrocnemius flap with painful foot deformity, intermittent left hip pain (with limitation of rotation), history of schizoaffective disorder, bipolar type, and alcohol dependence (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, the so-called "Listing of Impairments" (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform work activities

-2-

at the sedentary exertional level, subject to the following limitations: no balancing or climbing of ropes, ladders or scaffolds; must be permitted to alternate between sitting and standing as needed; no work on uneven surfaces; no repetitive use of foot controls on the right; no exposure to hazards, such as moving machinery or unprotected heights; no exposure to extremes of temperature or humidity or respiratory irritants; no exposure to the general public; limited contact with coworkers and supervisors (no teamwork); and not required to maintain concentration on a single task for longer than 15 minutes at a time.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on June 14, 1969, and was 35 years old, which is defined as a "younger individual age 18-44," on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the medical-vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not he has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering his age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant has not been under a disability, as defined in the Social Security Act, at any time since March 2005, the date the application was filed (20 CFR 416.920(g)).

On appeal, Plaintiff makes two arguments: (1) that the ALJ erred in finding Plaintiff's right lower extremity did not meet or equal listing 1.02; and (2) that the ALJ erred in rejecting the opinions of Plaintiff's treating physician, consulting physician, and mental health experts. Each assignment of error will be addressed in turn.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence and whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The ALJ must also apply the correct legal standards and follow the Commissioner's own regulations. Failure to do so will typically require reversal, irrespective of whether the ALJ's opinion is supported by substantial evidence. *Bowen*, 478 F.3d at 746.

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to SSI. 20 CFR § 416.912. That is, he must present sufficient evidence to show that, during the relevant time period, he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 1614(a)(3)(A) of the Social Security Act (42 U.S.C. § 1382c).

## A.

As his first assignment of error, Plaintiff asserts that the ALJ erred in finding that Plaintiff did not meet or equal Listing 1.02. It is Plaintiff's burden to prove he satisfies every element of the Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 525 (1990).

Listing 1.02A states:

> 1.02 *Major dysfunction of joint(s) (due to any cause)*: Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
>
> A. Involvement of one major peripheral weight-bearing joint (*i.e.*, hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 100B2b . . .

Listing 1.00B2b defines "inability to ambulate effectively" as follows:

> b. What We Mean by Inability To Ambulate Effectively
>
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

That Plaintiff has severe foot problems is not for debate. At issue is whether his foot problems meet the strictures of Listing 1.02. The ALJ determined that they did not, finding "no evidence of the inability to ambulate effectively, due to the involvement of one major peripheral weight-bearing joint." (Tr. 23). Despite Plaintiff's use of a cane, the ALJ noted that Plaintiff did not require a two-handed ambulatory aid. (*Id.*).

Plaintiff contends that he meets the Listing, which is particularly evident from the examples of ineffective ambulation in Listing 1.00B2b. The examples include: "the inability to walk a block at a reasonable pace on rough or uneven surfaces;" and "the inability to carry out routine ambulatory activities, such as shopping and banking." (Doc. 8 at 11).

Plaintiff maintains that the medical record and his testimony substantiate his inability to perform these activities and others, and therefore prove him disabled under Listing 1.02. He testified he could not use foot pedals to drive, that he had problems walking a block even with a cane, that he could not shop for groceries by himself, and that he had "great difficulties" walking on uneven ground even using a cane. (*Id.*; Tr. 426-27, 438, 449, 450). He cites a Social Security interviewer's observation that Plaintiff walked "with a severe limp, and slower than normal stride, [and] was holding on to [the] wall when entering and exiting SSA." (Tr. 120, Doc. 8 at 11). A physical therapy evaluator noted Plaintiff's "multiple gait deviations and significantly impaired right ankle range of motion," ultimately judging his potential for rehabilitation to be merely "fair." (Tr. 221, Doc. 8 at 11-12). Finally, Plaintiff also points to the opinions of Dr. Pullarkat and Dr. Martinez, both of who believed him disabled as a result of his profound foot troubles.

The Commissioner counters that the record is bereft of evidence, both medical and otherwise, that Plaintiff's foot problems made his unable to ambulate effectively. On the contrary, Dr. Vitols, a state agency examining orthopedic surgeon, noted that Plaintiff had

-7-

normal gait and did not use an ambulatory aid. (Tr. 197). As noted by the ALJ, Plaintiff uses a cane, yet it appears this was only prescribed in 2007, more than a decade after his alleged date of disability, and as a result of an injury. (Tr. 328). Plaintiff also told a medical assistant that he liked taking walks, and he mountain biked as recently as 2004 (during which he sustained an injury). (Tr. 352, 171). This is powerful evidence in support of the ALJ's determination.

At the same time, the evidence cited by Plaintiff is unconvincing. Neither the Social Security interviewer nor the physical therapy evaluator are competent authority. And Plaintiff's own testimony cannot support his claim on its own.

The opinions of Dr. Martinez and Dr. Pullarkat are likewise unpersuasive. Dr. Martinez, an orthopedic surgeon, was the most emphatic regarding Plaintiff's disability. In a September 22, 2005, consultation report, Dr. Martinez wrote that Plaintiff "at this point has not been able to work because he loses his balance. He falls since the right lower extremity cannot hold him up." (Tr. 222). "It is obvious," Dr. Martinez wrote, "that [Plaintiff], as he stands up, the right foot cannot hold him up to ambulate." (*Id.*). Dr. Martinez described Plaintiff's ailment as "the classical, typical, clubfoot that was never treated," which was confirmed by an x-ray. (*Id.*). The doctor concluded: "Daniel K. Adams at this point is not able to work. The patient will need extensive treatment for his lower extremity deformities to see if after that treatment the patient might be able to do any menial job. Bear in mind that this patient's education level is very low." (Tr. 223).

Dr. Pullarkat, an internist, completed a "Basic Medical" form on September 16, 2005. (Tr. 219-20). Dr. Pullarkat noted that Plaintiff's foot problems impacted his ability to stand, walk, and lift to an unknown extent, yet she concluded that Plaintiff was "unemployable" for twelve months or more. (Tr. 220).

The ALJ summarized the opinions of Dr. Martinez and Dr. Pullarkat and granted them little apparent weight in his disability determination. The ALJ cited the correct framework to determine the amount of deference to give medical source opinion and found both doctors' statements not well-supported by medically-acceptable clinical and laboratory diagnostic techniques, inconsistent with other substantial evidence in the record, and based on a single consultation rather than an extensive treatment record. (Tr. 27). Dr. Pullarkat actually hedged her own opinion, stating, "I have met this patient only once before & therefore my interpretations of him are limited." (Tr. 219). The ALJ noted that Dr. Martinez opined outside the area of his expertise when he considered Plaintiff's education in assessing his job prospects, as quoted *supra*. (*Id.*). More important than these internal problems with the opinions is the significant evidence in the record contradicting them. As noted *supra*, Dr. Vitols remarked that Plaintiff had normal gait and did not use an ambulatory aid, Plaintiff was only prescribed a cane in 2007 following an injury, and he liked taking walks and mountain-biked. In addition, no medical professional with any temporally significant relationship with Plaintiff considered him disabled due to his foot problems, plainly severe as they are.

There is a distinct lack of persuasive evidence that Plaintiff has an "extreme limitation of the ability to walk" as required to meet the requirements for Listing 1.02. Despite Plaintiff's severe foot problems, the ALJ's decision finding that Plaintiff did not meet the requirements for Listing 1.02 is supported by substantial evidence and it is affirmed.

### B.

For Plaintiff's second assignment of error he claims that the ALJ erred by rejecting the opinions of Plaintiff's treating physician, consulting physician, and mental health experts. The ALJ essentially dismissed the opinions of Dr. Pullarkat and Dr. Martinez (as discussed *supra*), as well as those of Plaintiff's treating mental health experts, Dr. Fraser and Ms. Cantaroni.

20 CFR § 404.1527 dictates how the ALJ is to weight a treating physician's opinion. Generally, the opinion of a treating physician is given greater weight than that of a non-treating physician. 20 CFR § 404.1527(d)(1). This is because treating physicians:

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 CFR § 404.1527(d)(2).

The ALJ must give a treating physician's opinion controlling weight if he finds it "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.* If a

treating physician's opinion is not granted controlling weight, the ALJ must calculate the weight it deserves by applying certain factors, including: the length of the treatment relationship and the frequency of examination; the extent of the treatment relationship; the nature and extent of the relevant evidence that the treating physician presents supporting his opinion; the consistency of the opinion with the record as a whole; the treating physician's specialization; and any other factor the claimant presents that tends to support or contradict the opinion. 20 CFR § 404.1527(d)(2)-(6).

Moreover, a decision denying benefits "must contain specific reasons for the weight accorded the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p. This rule requires an ALJ to explain his decision to a claimant who may not otherwise understand why he is being denied disability when his own doctor considers him disabled. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Furthermore, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*

As detailed previously, the opinions of Dr. Pullarkat and Dr. Martinez were both internally flawed and contrary to the substantial weight of the record. While Plaintiff terms Dr. Pullarkat his treating physician, the record contains only a single, two-page treatment note, in which Dr. Pullarkat even admits that her opinion is limited by her lack of treatment history with Plaintiff. (Tr. 219-20). Plaintiff himself acknowledges that Dr.

Pullarkat only saw Plaintiff one time before rendering her seemingly provisional opinion. (*See* Doc. 8 at 14). More still, Dr. Pullarkat's opinion was not even provisionally definitive, as she was "not sure" of the level of restriction Plaintiff's foot problems caused as to several capabilities. (Tr. 220). Crucially, Dr. Pullarkat did not base her judgment on any objective medical evidence.

Regarding Dr. Martinez, Plaintiff also concedes that he was only a one-time evaluating physician. (Doc. 8 at 14). While Dr. Martinez did review x-rays in forming his opinion that Plaintiff was disabled, his opinion was contradicted by much of the record, including Dr. Vitols' findings and Plaintiff's own reports of his activities.

Plaintiff argues that the ALJ cannot discount Dr. Pullarkat's and Dr. Martinez's opinions for being based on only one examination of Plaintiff each, while simultaneously accepting the opinion of the medical expert, Dr. Brahms, who merely reviewed Plaintiff's records (of which he either did not have a complete set or mistakenly ignored some). (Doc. 8 at 14). While the ALJ did accept much of Dr. Brahms' opinion that Plaintiff was not disabled, it is noteworthy that the ALJ crafted a more restrictive residual functional capacity than the medical expert proposed, finding Plaintiff limited to a reduced scope of sedentary, rather than merely light, work. (Tr. 25). Thus, instead of blithely accepting the opinion of one expert while discounting those of others, the ALJ properly evaluated all of the evidence in the record in forming his conclusion.

With regard to his mental limitations, on September 26, 2005, Ms. Cantaroni, a psychology resident, and Dr. Fraser, Ph.D., completed a mental function capacity assessment, following Ms. Cantaroni's psychological interview. (Tr. 224). The professionals found Plaintiff to be either markedly or extremely limited in various abilities related to "Understanding and Memory," "Sustained Concentration and Persistence," "Social Interaction," and "Adaptation." (*Id.*). Notably, as to the ultimate question whether they believed Plaintiff employable or not, the mental health experts stated that they had "no basis for judgment." (Tr. 225). Their reason for abstention was that "the information is based on an initial 1-hour interview with Mr. Adams and his mother and is therefore limited in scope." (*Id.*).

Much like Dr. Pullarkat's opinion, Dr. Fraser's and Ms. Cantaroni's opinion is inconclusive as to the fundamental issue of disability and constitutionally flimsy, confessedly so. Furthermore, it is in conflict with the bulk of the evidence, medical and otherwise, in the record, including the opinions of Drs. Jones, Katz, and Sheppard, as well as the self-reports of Plaintiff's daily activities.

The ALJ accurately summarized the findings and opinions of Dr. Martinez, Dr. Pullarkat, Dr. Fraser, and Ms. Cantaroni, subjected them to the proper legal guidelines, and adequately explained his decision to discount them. Each of the opinions has inbuilt defects undercutting their probity, and all go against significant evidence in the record. In short, substantial evidence supports the ALJ's decision to grant them little to no weight.

## III.

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and is **AFFIRMED**. The decision of the Commissioner, that Plaintiff was not entitled to social security income beginning on December 31, 1996, is supported by substantial evidence and, as no further matters remain pending for the Court's review, this case is closed.

**IT IS SO ORDERED.**

Date: 6/28/11

*Timothy S. Black*
Timothy S. Black
United States District Judge